**Ismail BAASIT, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 7, 2014.

Decided April 11, 2014.

David Crowley, Chief Public Defender, Bellefonte, for petitioner.

Kara W. Haggerty, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

In an appeal that re-examines credit issues between federal criminal sentences and state criminal sentences, Ismail Baasit (Inmate) petitions for review from an order of the Pennsylvania Board of Probation and Parole (Board) that denied his administrative appeal from a prior order recommitting him as a convicted parole violator and recalculating the maximum date of his original state sentence. Inmate contends the Board incorrectly recalculated his maximum sentence date by failing to credit the un-served balance of his state sentence with four years he spent in pre-federal sentence confinement in a state correctional institution (SCI). For the reasons that follow, we vacate the Board's order and remand for further proceedings.

## I.  Background

In May 2007, the Board paroled Inmate from his original aggregate sentence of 5 to 12 years for convictions on charges of robbery, burglary of an occupied structure, simple assault and escape. Inmate's initial maximum sentence date was March 22, 2012.

On November 26, 2007, Williamsport police arrested Inmate on new charges including robbery and unlawful possession of a firearm. The same day, the Board lodged a detainer against Inmate. In late August 2008, all new state criminal charges against Inmate were dismissed.

However, prior to dismissal of the state charges, the U.S. Attorney's Office arrested Inmate on charges of distribution and possession with the intent to distribute heroin, distribution and possession with the intent to distribute heroin within protected zones, and knowingly possessing, using, brandishing and carrying a firearm in furtherance of a drug trafficking crime. On August 29, 2008, a U.S. Magistrate issued a detention order committing Inmate to the custody of the U.S. Attorney General for confinement in a corrections facility pending trial on the federal criminal charges. *See* Certified Record (C.R.) at 69–70. The order noted: "The defendant is in federal custody." *Id.* At this point, there were both Board and federal detainers for Inmate.

Thereafter, the U.S. Attorney charged Inmate by amended information with two counts of interstate travel and transportation in furtherance of the distribution of heroin in violation of 18 U.S.C. § 1952(a)(3) and 21 U.S.C. § 841(a)(1). *See* C.R. at 71–72. In August 2010, Inmate pled guilty to both counts.

In November 2010, the Board held a revocation hearing at SCI–Rockview. In January 2011, the Board recommitted Inmate as a convicted parole violator to serve 30 months' backtime, *when available,* pending sentencing on his new convictions. C.R. at 79.

On August 27, 2012, a federal district court sentenced Inmate to serve 48 months in federal custody. *See* C.R. at 80–97. More specifically, the federal court's judgment provided that Inmate's 48–month term "consists of 48 months imprisonment on each of Counts 1 and 2 [of the amended information] to be served concurrently to each other *and consecutive to any sentence the defendant is now serving or for*

*which he is being held." Id.* at 83 (emphasis added).

The next day, August 28, 2012, Inmate returned to SCI custody. *See id.* at 115. In September 2012, the Board rendered a decision recommitting Inmate to serve 30 months' backtime and recalculated the maximum date of Inmate's original sentence as October 12, 2016. *Id.* at 99. In April 2013, the Board modified Inmate's maximum date by two days to October 10, 2016. *Id.* at 114.

The Board's recommitment order credited Inmate with 277 days from his arrest and detainer on November 26, 2007 on new state charges until August 29, 2008, when a U.S. Magistrate issued an order detaining Inmate on federal charges. *See* C.R. at 115. Subtracting 277 days from the 1781 days left on Inmate's original state sentence at time of his initial parole in May 2007 left a remaining backtime of 1504 days. *Id.* Adding the 1504 days to Inmate's return to custody on August 28, 2012 yielded a new maximum date of October 10, 2016. *Id.*

Inmate appealed the Board's decision, including the recalculation of his maximum date, by submitting an "administrative remedies form," which specified challenges to sentencing credit and the order of service of the sentences. *See* C.R. at 118–22. Inmate argued that in addition to the 277 days credit he received, the Board should have awarded him credit toward his backtime for the balance of his pre-sentence confinement.

The Board considered Inmate's appeal as a petition for administrative relief. In a June 2013 decision, the Board stated its reasons for denying Inmate credit for his entire pre-federal sentence confinement.

*See id.* at 123–24. In particular, the Board explained:

> [Inmate] is not entitled to a back time served credit (i.e. time that [Inmate] was held solely on the Board's warrant prior to his recommitment order) because he was never incarcerated *solely* on the Board's warrant. *See* [*Gaito v. Pennsylvania Board of Probation and Parole,* 488 Pa. 397, 412 A.2d 568 (1980)]. [Inmate] received back time credit from November 26, 2007 (date of Board's warrant) to August 29, 2008 (date federal charges filed) or 277 days. This is because the Lycoming County charges were withdrawn and thus, the Board's warrant was the sole source of [Inmate's] incarceration during this period of time. *However, [Inmate] is not entitled to additional credit because he was being held on secured bail at his federal docket until the date of his conviction on August 28, 2012.* Thus, when applying 277 days to 1,781 days yields a total of 1,504 days owed (or 4 years, 1 month, 12 days). [Inmate] became available to Pennsylvania authorities on August 28, 2012 when he was convicted at his federal docket. Adding 1,504 days to August 28, 2012 yields a new parole violation maximum date of October 10, 2016. Therefore, [Inmate's] new parole violation maximum sentence date is correct.

*Id.* (second emphasis by underline added). Inmate petitions for review.[1]

## II. Discussion

### A. Argument

Inmate contends the Board's recalculation of his new maximum sentence date failed to credit his original sentence with

---

1. Our review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. 2 Pa.C.S. § 704; *Adams v. Pa. Bd. of Prob. & Parole,* 885 A.2d 1121 (Pa.Cmwlth.2005).

all the time to which he is entitled. In particular, Inmate disagrees with the Board's conclusion that he remained unavailable to serve his state parole violation backtime until the federal court returned him to state custody on August 28, 2012.

Inmate asserts the Board's response to his administrative appeal appeared to concede that he is required to serve his state parole backtime prior to his service of his new 48–month federal sentence. Section 6138(a) of the Prisons and Parole Code (Parole Code) provides:

> (1) A parolee under the jurisdiction of the board released from a correctional facility, who during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.
>
> \*       \*       \*
>
> (5.1) *If the parolee is sentenced to serve a new term of total confinement by a Federal court* or by a court of another jurisdiction because of a verdict or plea under paragraph (1), *the parolee shall serve the balance of the original term before serving the new term.*

61 Pa.C.S. §§ 6138(a)(1) and (5.1) (emphasis added).[2]

Inmate claims the Board's improper calculation of his new maximum date rests on a misapprehension that federal authorities did not release him to Pennsylvania authorities until August 28, 2012. Inmate asserts he returned to state custody at SCI–Rockview on September 4, 2008 on "parole violator pending status." *See* C.R. at 122. Thereafter, he was temporarily released on a writ for court appearances for brief time periods in November 2008, January 2009, August 2010, July 2011 and February, March and April in 2012. *Id.* After each court appearance, he returned to SCI–Rockview. *Id.* Thus, Inmate argues, the Board lacked any factual basis to conclude he was not available to serve his state parole backtime until his release to Pennsylvania authorities on August 28, 2012.

Inmate also contends the Board erred in denying him full credit for his pre-sentence confinement where the federal court did not grant him any credit toward his 48–month sentence. The federal court's "Judgment and Commitment Order" provides (with emphasis added):

> The defendant is hereby committed to the United States Bureau of Prisons to be imprisoned for a total term of: Forty-eight (48) months. This term consists of 48 months imprisonment on each of Counts 1 and 2 to be served concurrently to each other *and consecutive to any sentence the defendant is now serving for which he is being held.*

C.R. at 83.

Inmate claims he is not entitled to any credit against his federal sentence for presentence confinement because he remained in the custody of the state correctional authorities, not the U.S. Bureau of Prisons (BOP). *Reno v. Koray,* 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (a federal prisoner is not entitled to pre-sentence credit unless under official detention subject to control of BOP).

In addition, Inmate posits, under the doctrine of primary jurisdiction, pre-sen-

---

**2.** The General Assembly added subsection 5.1 to 61 Pa.C.S. § 6138(a) by the Act of October 27, 2010, P.L. 931 (effective immediately). The federal district court convicted and sentenced Inmate in August 2012.

tence confinement credit must be applied to state parole backtime rather than the new federal sentence because the state parole detainer pre-dated the federal charges. *See Newsuan v. Pa. Dep't of Corr.,* 853 A.2d 409 (Pa.Cmwlth.2004) (primary jurisdiction doctrine affords the sovereign which first arrests a defendant with primary jurisdiction until it relinquishes its priority jurisdiction by such means as bail release, dismissal of state charges, parole release, or expiration of sentence).

Inmate also asserts the Board must be equitable and cannot deny sentence credit where its detainer is extant and there is no other sentence of incarceration to which that confinement may be applied. *See Martin v. Pa. Bd. of Prob. & Parole,* 576 Pa. 588, 840 A.2d 299 (2003) (where offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence). Here, Inmate asserts, the federal court did not apply any pre-sentence credit to his federal 48–month sentence, which the court made consecutive to Inmate's current state sentence. If not applied to his original sentence, Inmate maintains this time served will result in the service of "dead time" not allocable to either sentence in violation of *Martin.*

Nonetheless, Inmate acknowledges that in *Bowman v. Pennsylvania Board of Probation and Parole,* 930 A.2d 599 (Pa. Cmwlth.2007), we determined an inmate could not obtain credit toward his original state sentence for presentence confinement following conviction on a new federal charge where there was no indication the inmate sought sentencing credit on his federal sentence through the proper administrative channels. In *Bowman,* we noted that unlike state sentencing courts, federal sentencing courts do not have the authority to calculate credit for time spent in custody. Rather the U.S. Attorney General, through the BOP, possesses the sole authority to make credit determinations under 18 U.S.C. § 3585(b).

Inmate, however, argues *Bowman* disregards the entirely separate issue of whether the primary jurisdiction doctrine requires that the confinement credit at issue here be applied to Inmate's original sentence rather than the new federal sentence because the Board's detainer pre-dated the federal detention order. Inmate asserts the primary jurisdiction doctrine is the federal government's accepted means of resolving sentencing credit disputes.

In addition, Inmate contends the new legislative policy expressed in 61 Pa.C.S. § 6138(a)(5.1), that state parole violators serve their state parole backtime before serving a new federal sentence, originated in concerns that other sovereigns use Pennsylvania prisons and tax dollars to satisfy their sentences. The new legislative policy is consistent with a conclusion that Inmate's pre-sentence confinement be credited to his original state sentence, not his federal sentence. *See Santiago v. Pa. Bd. of Prob. & Parole,* 937 A.2d 610 (Pa. Cmwlth.2007) (this Court expressed concerns about the cost-effectiveness of the previous statutory requirement that a convicted parole violator serve his new out-of-state (Maryland) sentence prior to serving backtime on his original sentence, even where the Maryland sentence ran concurrently with his original sentence, which resulted in the prisoner serving his Maryland sentence in a Pennsylvania prison prior to serving his backtime).

For the above reasons, Inmate contends the Board should have credited his original sentence with all pre-sentence confinement between the Board's November 2007 detainer and his return to custody on Decem-

ber 24, 2010.[3] Thus, Inmate asserts he is entitled to a credit of 1124 days against the 1781 days he owed on his original sentence. Adding the 657 remaining days to December 24, 2010, the correct return of custody date, would yield a new maximum date of October 11, 2012. Because Inmate served more than the 657 days, he maintains he is entitled to release to his federal detainer.

### B. Analysis

#### 1. *Bowman*

The facts in the present case are somewhat similar to those in *Bowman*. There, the Board initially detained Bowman, a parolee, on a warrant pending new state firearms charges. Thereafter, the state dropped its charges, and the federal authorities filed charges against Bowman for the same precipitating event. In December 1991, Bowman pled guilty to the federal charges. In March 1992, the federal district court sentenced Bowman to a new term of 15 years, 8 months in BOP custody. In August 1992, the Board also recommitted Bowman as a convicted parole violator to serve 18 months.

In August 2006, *after* Bowman served more than 14 years and 10 months on his federal sentence, the federal authorities returned him to state prison. Thereafter, the Board issued a recalculation order that did not credit his original state sentence with the 158 days Bowman spent confined on the new federal charge without posting bail. The Board also denied credit for the 241 days Bowman spent confined from his sentencing to his return to the BOP to serve his federal sentence.

Bowman argued his 158–day pre-sentence confinement from arrest to sentencing must be applied to his original sentence because it could not be applied to his new federal sentence. Bowman noted that his federal court sentence on federal charges contained no credit for time served.

In denying Bowman's appeal, we recognized that unlike Pennsylvania state courts under Section 9760 of the Sentencing Code, 42 Pa.C.S. § 9760, federal district courts do not have the authority to calculate credit for time spent in custody. "Instead, it appears that it is the Attorney General, through the BOP, that possesses the sole authority to make credit determinations pursuant to 18 [U.S.C.] § 3585(b)." *Bowman* at 605.

Noting the record did not reflect that Bowman sought sentencing credit on his new federal sentence through the proper administrative channels, we reasoned that Bowman's appropriate remedy would have been through the BOP, which had the power to make credit determinations, not the Board. *See McCray v. Pennsylvania Dept. of Corrections*, 582 Pa. 440, 872 A.2d 1127 (2005) (issues concerning the proper allocation of sentencing credit must be addressed by the sentencing court, which had the power to make credit determinations);

---

**3.** Inmate asserts the record shows the Board acquired the necessary two signatures to officially recommitment him as a convicted parole violator on December 24, 2010. *See* Revocation Hearing Report, 11/30/10, at 6; C.R. at 34. Therefore, Inmate maintains, the Board erred or abused its discretion by failing to acknowledge this date, rather than August 28, 2012, as the correct return of custody date for purposes calculating his new maximum date.

We disagree. Although the Board acquired the necessary two signatures to recommit Inmate as a convicted parole violator following Inmate's entry of his guilty pleas, the federal court did not enter judgment against Inmate and return him to state custody until August 28, 2012. Consequently, Inmate remained in both state and federal custody until that time.

*Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348 (Pa.Cmwlth.2007) (where a sentencing court does not give an inmate full credit for time served, the inmate's remedy is in the sentencing court, not the Board).

■ Here, the federal court directed that Inmate's 48–month federal sentence run *consecutive* to any sentence Inmate *"is now serving or for which he is being held."*[4]   C.R. at 83 (emphasis added). Thus, unlike in Bowman, Inmate was ordered to serve his original state sentence *prior* to serving new federal sentence. This is a material distinction. Moreover, as will be discussed more fully below, Inmate will serve his original state sentence *before* there is a determination of credits due on his new federal sentence. These distinctions render deference to federal administrative credit calculations problematic.

### 2.   Credit against New Federal Sentence

As to credit for Inmate's federal sentence, 18 U.S.C. § 3585 (calculation of a term of imprisonment) provides in pertinent part (with emphasis added):

> **(b)  Credit for prior custody.** *A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—*
>
> (1) *as a result of the offense for which the sentence is imposed; or*
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

> *that has not been credited against another sentence.*

18 U.S.C. § 3585(b).

The federal court's August 29, 2008 detention order required, based upon Inmate's "risk of flight" and "danger to the community" that Inmate be "committed to the custody of the Attorney General or his designated representative *for confinement in a corrections facility* separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal." C.R. at 69 (emphasis added).  Pursuant to plain language of 18 U.S.C. § 3585(b), it appears Inmate would be entitled ultimately to pre-sentence credit for the time he spent confined under the federal court's detention order.

Inmate contends that the U.S. Supreme Court's decision in *Reno* holds that a prisoner is not entitled to any credit against his federal sentence unless he is in BOP custody.  We disagree.  In *Reno*, the Supreme Court essentially held that time spent by a prisoner in a community treatment center did not constitute "official detention" for purposes of credit toward a federal sentence under 18 U.S.C. § 3585(b).  In *Bowman*, we rejected the precise argument Inmate raises here:

> Contrary to Petitioner's assertions, we do not believe that *Reno* stands for the proposition that an inmate must be subject to the control of the BOP in order to be in 'official detention' and therefore entitled to credit for prior custody on his new sentence pursuant [to] 18 [U.S.C.] § 3585.  Indeed, it is entirely clear that United States Supreme Court granted certiorari in *Reno* 'to resolve a conflict among the Courts of Appeals on the question of whether a federal prisoner is entitled to credit against his sentence

4.  "[W]hen an offender is held on new criminal charges as well as a detainer lodged by the Board, we believe that the offender is

confined for both offenses." *Martin v. Pa. Bd. of Prob. & Parole*, 576 Pa. 588, 596, 840 A.2d 299, 303 (2003).

under § 3585(b) for time he was "released" on bail pursuant to the Bail Reform Act of 1984.' *This is simply not the case here. In fact, the Supreme Court's opinion actually acknowledges that the BOP has the power to grant credit under Section 3585(b) for time spent in state custody.*

*Bowman,* 930 A.2d at 604–05 (citing *Reno,* 515 U.S. at 63 n. 5, 115 S.Ct. 2021) (emphasis added).

■ In accord with *Bowman,* we reject Inmate's contention that the U.S. Supreme Court's decision in *Reno* precludes the BOP from granting him credit for his presentence confinement in an SCI under both the Board's detainer and the federal detainer pending disposition of the federal charges.

### 3. Timing of Credit against New Federal Sentence

■ In *United States v. Wilson,* 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), the U.S. Supreme Court recognized that under 18 U.S.C. § 3585(b), a defendant convicted of a federal crime has a right to receive credit for time spent in official detention before his sentence begins. However, the *Wilson* Court, speaking though Justice Thomas, rejected the prisoner's argument that 18 U.S.C. § 3585(b) authorizes a district court to award credit at sentencing. Rather, the Court reasoned the language used in Section 3585(b) reflected that "Congress has indicated that computation of the credit must occur after the defendant begins his sentence." *Wilson,* 503 U.S. at 333, 112 S.Ct. 1351. To that end, Justice Thomas observed (with emphasis added):

After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence. To fulfill this duty, the BOP must know how much of the sentence the offender has left to serve. *Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant.*

*Id.* at 335, 112 S.Ct. 1351 (citation omitted).

Consequently, in accord with *Wilson,* credit under 18 U.S.C. § 3585(b) toward Inmate's new federal sentence cannot be calculated until he begins serving his federal term. In *Wilson,* the Court further noted, the BOP developed detailed procedures and guidelines for determining the credit available to prisoners.

### 4. *Martin* and Equitable Crediting

Inmate also contends *Martin* requires that the Board must be equitable and cannot deny him pre-sentence credit under *Gaito* (no credit against original sentence where prisoner confined on new charges) where the Board's detainer is extant and there is no other sentence of incarceration to which that confinement can be applied.

In *Martin,* the parolee was confined on both his original sentence and new state charges. The parolee was ultimately convicted on a drunk driving charge and sentenced to total term of 48 consecutive hours confinement. The Board, however, failed to credit the convicted parolee's original sentence with the 13 months and 19 days he spent confined on the new charges. In departing from the *Gaito* rule that a parolee's confinement on new charges cannot be credited to his original sentence, the Supreme Court reasoned (with emphasis added):

*It is now the opinion of this Court that the Board should not have been divested of its ability to make a determination concerning credit for time served*

*for pre-sentence detention in instances where confinement is a result of both the detainer for a parole violation and the failure to meet conditions of bail on the new offense.* Significantly, the General Assembly has sought to foreclose the award of such a credit only as against time spent at liberty on parole, thus suggesting the availability of credit for periods of incarceration. *Moreover, as noted by Judge Smith–Ribner in her dissenting opinion in this case, and Judge Friedman in her dissenting opinion in [Owens v. Pennsylvania Board of Probation and Parole,* 753 A.2d 919 (Pa. Cmwlth.(2000)) *], the considerations relevant to the award of credit are just and equitable in nature. Unique combinations of circumstances will be presented in different cases that tip the balance for or against the particular allocation of credit. Decision making in this contest, is thus, particularly suited to a discretionary framework with guidelines to ensure equitable treatment.* Indeed, because the rules devised in *Gaito* and the underlying cases were incapable of anticipating all possible credit permutations, the decision by the courts to occupy this area has resulted in a denial of confinement credit to offenders who would have received time credit prior to [*Mitchell v. Pennsylvania Board of Probation and Parole,* 31 Pa.Cmwlth. 243, 375 A.2d 902 ((1997)) ].

*Martin,* 576 Pa. at 604–05, 840 A.2d at 308 (citations omitted).

Here, the Board explained in its decision that Inmate was entitled to 277 days credit against his original sentence for confinement solely on the Board's warrant. *See* C.R. at 123. However, the Board, citing *Gaito,* denied Inmate credit for any other pre-sentence confinement "because he was never incarcerated *solely* on the Board's warrant." *Id.* (emphasis in original).

While there are factual distinctions between *Martin* and the present case, the 2003 decision in *Martin* is noteworthy in that it represents some flexibility in credit assignments from the approach under the 1980 decision in *Gaito.*

### 5. New Statutory Provision

■ The new provision in the Parole Code, 61 Pa.C.S. § 6138(a)(5.1), which became effective immediately when enacted October 27, 2010, requires that if a parolee is sentenced to a new term of confinement by a federal court, the parolee shall serve the balance of his original state term before serving the new federal sentence. The addition of subsection 5.1 constituted a significant change in legislative policy regarding the order of service of sentences where the convicted parole violator received a new sentence in a federal court or a court of another jurisdiction.

The federal court entered judgment against Inmate on August 27, 2012. C.R. at 81. Consequently, 61 Pa.C.S. § 6138(5.1) is applicable.

Unfortunately, the Board failed to clearly address new subsection 5.1 either in its decision denying Inmate's administrative appeal or in its brief to this Court. *See* Respondent's Br. at 8 ("It is undisputed that the Prisons and Parole Code requires convicted parole violators to serve the backtime from their original sentence consecutive to the period of imprisonment imposed for their new sentence. 61 Pa.C.S. § 6138"). This failure, coupled with its continued reliance on the Supreme Court's 1980 decision in *Gaito,* explains the Board's apparent position that Inmate can serve backtime on his original state sentence after he completes his new federal sentence. Under both new subsection 5.1 of the Parole Code and the terms of Inmate's new federal sentence, all of Inmate's original state sentence should be

served before service of the new federal sentence commences.

■ Our conclusion that credit here should be awarded according to new subsection 5.1 of the Parole Code is also supported by the primary jurisdiction doctrine. Under that doctrine the sovereign which first arrests a defendant is afforded primary jurisdiction. *See Newsuan.* Our conclusion is also consistent with the Supreme Court's more flexible approach to credit, as set forth in *Martin.*

In addition, 18 U.S.C. § 3585(b) precludes the BOP from granting Inmate credit toward his new federal sentence for any time credited toward his original state sentence. As such, there is no possibility that Inmate will receive double credit for his pre-sentence confinement. *See, e.g., United States v. Dennis,* 926 F.2d 768 (8th Cir.1991) (under 18 U.S.C. § 3585(b) a defendant is entitled to credit for time spent in official detention only if it has not been credited against another sentence; thus, where defendant received credit on his state sentence for the time he spent in state custody, he is not entitled to credit for that time against his federal sentence).

### III. Conclusion

For the above reasons, a remand to the Board is appropriate for reconsideration of Inmate's entitlement to credit against his original state sentence for confinement before the new federal sentence was imposed. Accordingly, the Board's final order is vacated, and this case is remanded for further proceedings consistent with this opinion.

### *ORDER*

**AND NOW,** this 11th day of April, 2014, the order of the Pennsylvania Board of Probation and Parole is **VACATED** and this case is **REMANDED** to the Board for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.