IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alfonso Caldwell,                               :
                  Petitioner      :
                                      :     No. 882 C.D. 2022
           v.                                :
                                        :     Submitted: May 12, 2023
Pennsylvania Parole Board,                      :
                  Respondent      :

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
PER CURIAM                                FILED: November 30, 2023

Alfonso Caldwell (Petitioner), *pro se*, petitions for review of the July 27, 2022 order of the Pennsylvania Parole Board (Board), which denied his request for administrative review and affirmed its February 23, 2022 decision to recommit him as a convicted parole violator (CPV) to serve 24 months' backtime. Upon careful review, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner is an inmate currently incarcerated at the State Correctional Institution (SCI) at Frackville (SCI-Frackville). On September 6, 1990, Petitioner was arrested and convicted of third-degree murder.[1] (Certified Record (C.R.) at 1-2.) Petitioner was paroled on September 13, 2000. (C.R. at 6-9.)

On July 26, 2004, the Board mailed a decision recommitting Petitioner as a technical parole violator to serve six months' backtime. (C.R. at 11-12.) On March 24, 2005, Petitioner was released on parole with a maximum sentence date of September 6, 2010. (C.R. at 19.) On August 6, 2008, Petitioner was indicted for

---

[1] 18 Pa. C.S. § 2502(c).

federal crimes[2] based on his conduct while at liberty on parole. (C.R. at 52-65.) On August 26, 2008, the federal court issued an order of detention in the new criminal case. (C.R. at 44.) On March 4, 2013, Petitioner was sentenced to 180 months' incarceration in federal prison. (C.R. at 28, 33, 36.) On October 5, 2021, Petitioner was released from federal prison and on October 15, 2021 returned to state custody at SCI-Frackville. (C.R. at 93, 102.)[3] On January 3, 2022, the Board notified Petitioner via a "Notice of Charges and Hearings" form that his revocation hearing would occur on January 25, 2022, at 9:00 a.m. at SCI-Frackville. (C.R. at 28.) At the revocation hearing, Petitioner was represented by Attorney Anthony List, who argued that the Board should credit the time Petitioner spent in federal custody to his state sentence due to Petitioner's poor health. (C.R. at 84.) Petitioner did not contest his violations. (C.R. at 86.)

On February 23, 2022, the Board recorded a decision (mailed March 1, 2022) that recommitted Petitioner as a CPV and recalculated his maximum sentence date as March 20, 2027. (C.R. at 105-06.) On March 28, 2022, the Board received Petitioner's Administrative Remedies Form. (C.R. at 107-13.) On April 1, 2022, the Board received an additional Administrative Remedies Form on Petitioner's behalf from Attorney Kent D. Watkins challenging the timeliness of the revocation hearing.

---

[2] Petitioner was indicted for: (1) Conspiracy to Distribute 5 or more kilograms of cocaine, in violation of 21 U.S.C. § 846; (2) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); (3) distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1)(b)(1)(B); (4) possession of firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (5) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). (C.R. at 35.)

[3] The record does not provide any explanation to the lapse between the date of Petitioner's release from federal prison and the date he was returned to state custody.

(C.R. at 114-16.) On July 27, 2022, the Board affirmed its February 23, 2022 decision. (C.R. at 117-20.) Subsequently, Petitioner appealed to this Court.

## II. ISSUES

On appeal,[4] from what the Court can glean from Petitioner's brief, he raises several issues: (1) whether the Board erred by not considering his individual circumstances in denying his request for administrative review; (2) whether the Board erred by not treating him the same as his similarly situated co-defendant; (3) whether the Board erred when it failed to conduct a timely revocation hearing; (4) whether the Board erred in recalculating his maximum sentence by denying him credit for time spent in federal custody awaiting sentencing; and (5) whether the Board erred in its calculation of the imposed recommitment period of 24 months.

## III. DISCUSSION

### A. Waiver

Initially, we must address Petitioner's first two issues, namely whether the Board erred by not considering Petitioner's individual circumstances in denying his request for administrative review and whether the Board erred by not treating Petitioner the same as his similarly situated co-defendant.

It is well settled that a party may not assert an issue on appeal from a governmental agency unless he raised it in the first instance at the administrative level. 2 Pa. C.S. § 703(a); Pa. R.A.P. 1551; *McCaskill v. Pennsylvania Board of Probation and Parole*, 631 A.2d 1092, 1094-95 (Pa. Cmwlth. 1993) ("It has been the holding of this Court that the issues not raised by a CPV before the Board in an administrative

---

[4] In reviewing a recommitment decision, this Court's review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the decision is in accordance with the law, and whether the Board violated any of the parolee's constitutional rights. *Smith v. Pennsylvania Board of Probation and Parole*, 81 A.3d 1091, 1093 n.1 (Pa. Cmwlth. 2013).

appeal are waived for purposes of appellate review by this Court."). Here, Petitioner did not raise either of these issues before the Board in either his *pro se* or his counseled administrative remedies form. (C.R. at 107-16.) Because these issues were not raised before the Board, we conclude they are waived and cannot be considered for the first time on appeal.

## B. Timeliness of the Revocation Hearing

Next, Petitioner argues, relying on *Fumea v. Pennsylvania Board of Probation and Parole*, 147 A.3d 610 (Pa. Cmwlth. 2016), that, pursuant to Section 6138(a)(5.1) of the Prisons and Parole Code (Code),[5] 61 Pa. C.S. § 6138(a)(5.1), he was to serve the remaining balance of his original state term before serving the new federal sentence imposed on March 4, 2013. Petitioner asserts he was available to the Board when he was convicted of the federal charges on March 4, 2013, and, as in *Fumea*, the Board did not ensure that he served the balance of his original state sentence in accordance with Section 6138(a)(5.1), which resulted in an unreasonable delay in the holding of his revocation hearing. Petitioner argues that, between August 25, 2008, when he was detained by the federal agents, and March 4, 2013, the day of his sentencing, the Board had ample time to assert its jurisdiction and have Petitioner serve the balance of his original state term.

The Board responds that the timeliness of a revocation hearing is governed by Section 71.4 of its regulations, 37 Pa. Code § 71.4, which provides that if a parolee is confined to a federal prison, the revocation hearing does not have to be held until 120 days from when the Board received official verification of the parolee's return to

---

[5] Section 6138(a)(5.1) states: "If the offender is sentenced to serve a new term of total confinement by a [f]ederal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), the offender shall serve the balance of the original term before serving the new term." 61 Pa. C.S. § 6138(a)(5.1).

an SCI. According to the Board, because Petitioner was not confined at an SCI until October 15, 2021, his revocation hearing, held within 120 days of his return, was timely. The Board further maintains that Petitioner's reliance on Section 6138(a)(5.1) disregards the facts that he was in federal custody until October 5, 2021, and that the Board had no ability to take him from the federal authorities to conduct a revocation hearing and recommit him as a CPV. Finally, the Board argues, *Fumea* is distinguishable because, unlike in that case, there was no opportunity for the Board to obtain custody of Petitioner after his sentencing and prior to his entering federal custody. Therefore, the Board asserts that Petitioner was not entitled to a revocation hearing prior to his return to an SCI. We agree with the Board.

When a parolee challenges the timeliness of a revocation hearing, the Board has the burden of proving by a preponderance of the evidence that the hearing was, in fact, timely. *Ramos v. Pennsylvania Board of Probation and Parole*, 954 A.2d 107, 109 (Pa. Cmwlth. 2008) (quotations omitted). If the Board does not present substantial evidence to establish the timeliness of a revocation hearing, the parole violation charges are dismissed with prejudice. *Id.*

To meet its burden, the Board relies on its regulations addressing the timing of, and procedures related to, revocation hearings to assert that Petitioner's revocation hearing was timely. Section 71.4(1)(i) of the Board's regulations states, in relevant part, that:

> The following procedures shall be followed before a parolee is recommitted as a [CPV]:
>
> (1) **A revocation hearing shall be held within 120 days from the date the Board received official verification of the pleas of guilty or nolo contendere** or of the guilty verdict at the highest trial court level **except as follows:**

5

(i) **If a parolee is confined outside the jurisdiction of the Department of Corrections, such as** confinement out-of-state, **confinement in a Federal correctional institution** or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with [*Commonwealth ex rel. Rambeau v. Rundle*, 314 A.2d 842 (Pa. 1973)], **the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to [an SCI].**

37 Pa. Code § 71.4(1)(i) (emphasis added). Section 71.5(a), (c)(1) offers additional guidance, providing, in relevant part:

(a) **If the parolee** is in . . . **Federal custody**, the Board may lodge its detainer but **other matters may be deferred until the parolee has been returned to [an SCI]** in this Commonwealth.

. . . .

(c) In determining the period of conducting hearings under this chapter, **there shall be excluded from the period, a delay in any state of the proceedings which is** directly or indirectly attributable to one of the following:

(1) **The unavailability of a parolee** or counsel.

37 Pa. Code § 71.5(a), (c)(1) (emphasis added). Thus, under this regulation, when a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the Board's duty to hold a revocation hearing, or take other action beyond issuing a detainer, is deferred until the parolee is returned to an SCI regardless of when the Board received official verification of a parolee's new conviction. *See Brown v. Pennsylvania Board of Probation and Parole*, 184 A.3d 1021, 1025 (Pa. Cmwlth. 2017) (quotations omitted).

6

Petitioner asserts these regulations are inapplicable due to the General Assembly's October 2010 addition of Section 6138(a)(5.1) to the Code,[6] which provides "[i]f the offender **is sentenced to serve a new term of total confinement by a Federal court** or by a court of another jurisdiction because of a verdict or please under paragraph (1), **the offender shall serve the balance of the original term before serving the new term.**"  61 Pa. C.S. § 6138(a)(5.1) (emphasis added).

This Court recently addressed the interplay between the revocation hearing provisions of Section 74.4(1)(i) of the regulations and the new order-of-sentences requirements of Section 6138(a)(5.1).  In *Fumea*, federal authorities arrested the parolee while on parole from a state sentence, and, after his release on bond on the federal charges, the Board detained him pending the disposition of those charges.  *Fumea*, 147 A.3d at 611.  He remained in an SCI on the Board's detainer until his original maximum sentence expired, at which time the Board lifted its warrant and he was released.  Because he was no longer being held on the Board's detainer and was

---

[6] The General Assembly also amended Section 6138(a)(5) of the Code as follows, with the added language emphasized:

> (5) If a new sentence is imposed on the offender, the service of the balance of the term originally imposed **by a Pennsylvania court** shall precede the commencement of the new term imposed in the following cases:
>
>> (i) If a person is paroled from [an SCI] and the new sentence imposed on the person is to be served in the [SCI].
>>
>> (ii) If a person is paroled from a county prison and the sentence imposed upon him is to be served in the same county prison.
>>
>> (iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

61 Pa. C.S. § 6138(a)(5) (emphasis added).

out on bail on the federal charges, the parolee was at liberty while awaiting his federal trial. *Id.* After a federal jury found him guilty on July 8, 2011, the parolee remained on bail until his sentencing on November 21, 2011. The parolee's **parole agent attended the sentencing hearing**, and the **Board issued a warrant to commit and detain him on that day**. However, the agent did not take the parolee into custody, and the parolee was remanded into the custody of the United States Marshal. The parolee was not released from federal custody until December 24, 2014, and he was returned to an SCI. The Board held a revocation hearing after his return, the timeliness of which the parolee challenged. The parolee asserted that he had been available to the Board at the time of his sentencing and the Board had not taken custody of him, thereby making him serve his federal sentence first in contravention of Section 6138(a)(5.1). The Board concluded the revocation hearing was timely under Section 71.4(1)(i) of the regulations, and the parolee petitioned this Court for review.

We framed the issue in *Fumea* as "whether Section 6138(a)(5.1) imposes [a] duty upon the Board to assert its jurisdiction over a parolee who, upon his conviction in federal court, becomes a [CPV] but who is not yet in federal custody under these circumstances." *Fumea*, 147 A.3d at 615. The Court held that, despite the expiration of the parolee's maximum date, the Board retained jurisdiction to recommit him as a CPV pursuant to Section 6138(a)(1),[7] and he became available to the Board upon his

---

[7] Specifically, Section 6138(a)(1.1) provides:

[A] parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere or of any misdemeanor of the third degree or of any of the following offenses where graded as a summary offense, may at the discretion of the board be recommitted as a parole violator[.] . . .

61 Pa. C.S. § 6138(a)(1.1).

8

conviction in federal court. *Id.* at 616. Further, noting that the Court has interpreted Section 71.4 of the regulations to "attempt[ ] to strike a balance, adhering to the letter of the regulations while remaining cognizant of the due process concerns that drove [its] . . . promulgation" to ensure timely revocation hearings, we rejected the Board's argument that the parolee could not rely on the date of his sentencing to begin the 120-day period because that date was not the date the Board received official verification of the parolee's new conviction. *Id.* at 617. Because the Board's actual knowledge of the conviction, as evidenced by the agent's presence at the sentencing hearing, effectuated the purpose of official verification, this Court held that the revocation hearing, held more than 120 days after the Board had notice of the conviction and could have, but did not, take custody of the parolee, was untimely. *Id.* at 619-20. Importantly, we added that the General Assembly clearly intended to change the order of service of sentences through its enactment of Section 6138(a)(5.1), and that "the Board's delay in acquiring 'official verification' or its inaction at a parolee's sentencing, as occurred here, can render [that Section] a nullity, thus defeating the legislative intent." *Id.* at 615, 619.

Petitioner argues that, pursuant to this new section, there was an undue delay in conducting a revocation hearing, like the parolee in *Fumea*, he became available to the Board at the time of his federal conviction, and, therefore, a revocation hearing should have been held within 120 days of the Board's receipt of the official verification of that conviction. However, the parolee in *Fumea* **was not in federal custody** when he became available to the Board because he was **on bail** from the federal charges. It was only at the sentencing hearing **after the parole agent did not take the parolee into custody, that he was remanded into federal custody and thus became unavailable to the Board**.

9

Here, it is undisputed that Petitioner was in federal custody both before and after his federal sentencing and when the Board received official verification of his conviction. His argument presumes that the Board had the **ability to obtain him from federal custody** in order to hold a revocation hearing and recommit him as a CPV to serve the remainder of his original sentence in accordance with Section 6138(a)(5.1). However, the Board asserts that it does not have the ability to acquire a Pennsylvania parolee from the custody of another jurisdiction in order to recommit the parolee to serve the remainder of the original sentence. Petitioner has not provided any legal authority that grants the Board this authority. Thus, unlike the parolee in *Fumea* over whom the Board's agent could have immediately taken custody, but did not, thereby allowing the parolee to be placed into federal custody, Petitioner was **already unavailable to the Board** when he pled guilty and was sentenced, as well as when the Board received official verification of his conviction. The Board could not have acquired Petitioner until after his release from federal custody in October 2021. Under these circumstances, we are not persuaded by Petitioner's argument that Section 71.4(1)(i) of the regulations is inapplicable based on Section 6138(a)(5.1) and *Fumea*.

Applying the general revocation hearing provisions of the regulations because Petitioner was confined outside the jurisdiction of the DOC, the revocation hearing had to be held within 120 days of the date he was returned to an SCI to be timely. 37 Pa. Code § 71.4(1)(i). Petitioner's January 25, 2022 revocation hearing was held 112 days after his October 5, 2021 release from federal custody. Thus, there was no error in the Board's conclusion that Petitioner's revocation hearing was timely.

**C. Credit for Time Spent Incarcerated/Recalculation of Maximum Date**

Petitioner argues that the Board erred in recalculating his maximum sentence by denying him credit for the period he spent in federal custody awaiting

10

sentencing on his federal convictions from August 26, 2008, to March 4, 2013. Petitioner relies on *Baasit v. Pennsylvania Board of Probation and Parole*, 90 A.3d 74 (Pa. Cmwlth. 2014), and *Smith v. Pennsylvania Board of Probation and Parole*, 133 A.3d 820 (Pa. Cmwlth. 2016), *reversed*, 171 A.3d 759 (Pa. 2017).

> As this Court has stated:
>
> "The general rule governing the allocation of credit for time served awaiting disposition of new criminal charge was established by our Supreme Court in *Gaito v. Pennsylvania Board of Probation* [*and*] *Parole*, . . . , 412 A.2d 568 ([Pa.] 1980)." *Armbruster v. Pennsylvania Board of Probation & Parole*, 919 A.2d 348, 352 (Pa. Cmwlth. 2007). Pursuant to *Gaito*, "this Court consistently held that once a parolee is sentenced on a new criminal offense, the period of time between arrest and sentencing, when bail is not satisfied [on the new criminal charge], must be applied toward the new sentence, and not to the original sentence." *Armbruster*, 919 A.2d at 352.

*Stroud v. Pennsylvania Board of Probation and Parole*, 196 A.3d 667, 674 (Pa. Cmwlth. 2018) (footnote omitted). Moreover, Section 6138(a)(5.1) of the Code does not **require or authorize** the Board to retrieve a parole violator from federal custody to serve a state sentence.

Here, the Board's decision to recommit Petitioner authorized the recalculation of Petitioner's maximum sentence date to reflect that he received no credit for the time spent at liberty on parole because his federal convictions involved possession of a weapon. (C.R. at 118.) Because the Board denied credit for time spent at liberty on parole, Petitioner owed 1,992 days on his original sentence. There is no indication in the record that Petitioner posted bail on his federal charges. He, therefore, was never detained solely on the Board's warrant, as there was a federal detainer in place. *See Gaito*; *see also Stroud*, 196 A.3d at 673-74 (holding that the Board did not

11

have the authority under the Code to retrieve a parolee from federal custody following his arrest on federal charges to conduct a revocation hearing and to allow him to serve backtime on his original sentence while he was still in federal custody).

Regarding the calculation of Petitioner's maximum sentence date, the Board based its calculation on his initial March 24, 2005 release date and his original maximum sentence date of September 6, 2010. At the time he was originally paroled, Petitioner had 1,992 days on his original sentence. Federal authorities detained Petitioner on August 26, 2008. Petitioner was sentenced on his federal charges on March 4, 2013, and was released from federal custody on October 5, 2021, after completing his federal sentence. At this point, Petitioner became available to serve the balance of his original sentence. Therefore, adding 1,992 days to his release from federal custody date of October 5, 2021, yielded a recalculated maximum sentence date of March 20, 2027.

Accordingly, the Board did not err by denying Petitioner credit for time he spent incarcerated on his federal conviction and thereby recalculating his maximum sentence date.

### D. Presumptive Ranges for CPV

Petitioner argues that the Board erred by recommitting him for 24 months. This argument is unavailing.

The Board's regulations provide a set of presumptive ranges of recommitment terms for CPVs. 37 Pa. Code § 75.2. Because the General Assembly has given the Board broad authority to craft regulations of this kind, *see Chapman v. Pennsylvania Board of Probation and Parole*, 474 A.2d 413, 417-18 (Pa. Cmwlth. 1984), we will not entertain a challenge to a term of recommitment that falls within the appliable range for the crimes at hand. *Barnes v. Pennsylvania Board of Probation*

*and Parole*, 203 A.3d 382, 388 (Pa. Cmwlth. 2019). When a parole violator is convicted of multiple crimes, the Board may create an aggregate presumptive range by adding together the ranges of each applicable crime. *Ward v. Pennsylvania Board of Probation and Parole*, 538 A.2d 971, 975 (Pa. Cmwlth. 1988).

Here, Petitioner was convicted of conspiracy to distribute 5 or more kilograms of cocaine, money laundering, distribution of 500 grams or more of cocaine, convicted felon in possession of a firearm, and possession of firearm in furtherance of drug trafficking crime. (C.R. at 35.) Section 75.2 of the Board's regulations provides for the following presumptive ranges: 18 to 24 months for conspiracy to distribute 5 or more kilograms of cocaine; 24 to 40 months for money laundering; 18 to 24 months for distribution of 500 grams or more of cocaine; and 18 to 24 months for possession of a firearm in furtherance of a drug trafficking crime. 37 Pa. Code § 75.2. The Board added the maximum presumptive ranges for each of the offenses, which provided the Board with aggregate range of 136 months.[8] The 24-month term imposed by the Board falls well within that range. Because Petitioner's backtime does not exceed the aggregate range, his claim lacks merit.

## IV. CONCLUSION

Based on the foregoing, we conclude that Petitioner's arguments regarding the Board's failure to consider his individual circumstances and to treat him

---

[8] The Board's order mailed July 27, 2022 stated:

The presumptive range for those offenses, as outlined in Pa. Code §§ 75.1-75.2. are as follows:
> Conspiracy to distribute 5 or more kilos of cocaine = 18 to 24 months
> Money laundering = 24 to 40 months
> Distribution of 500 grams or more of cocaine = 18 to 24 months
> Convicted felon in possession of a firearm = 18 to 24 months
> Possession of a firearm in furtherance of a drug trafficking crime = 18 to 24 months

(C.R. at 118.)

13

similarly to his co-defendant are waived as he failed to raise them before the Board. We also conclude that Petitioner's argument that the Board failed to hold a timely revocation hearing is unpersuasive because it was performed within 120 days after he returned to the SCI. Furthermore, we conclude that Petitioner's argument regarding credit time and the miscalculation of his maximum date is not persuasive as he was not available for the Board's detention, and the maximum date accurately reflected the absence of time credit. Finally, we conclude that Petitioner's challenge to the Board's imposition of backtime lacks merit. Accordingly, we affirm the Board's order.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alfonso Caldwell, :
            Petitioner :
  :
  : No. 882 C.D. 2022
          v. :
  :
Pennsylvania Parole Board, :
           Respondent :

## *PER CURIAM*

## *ORDER*

AND NOW, this 30th day of November, 2023, the July 27, 2022 order of the Pennsylvania Parole Board is AFFIRMED.